**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                         No. CR 24-00889-JB

GERARDO OLAIZ,

       Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on: the Defendant's Response in Opposition to the United States' Objections to the Presentence Report [Doc. 10] [sic] and Objections to the Revised Presentence Report [Doc. 11] [sic], filed September 29, 2024 (Doc. 15)("Response"). Sentencing in this matter will take place on October 3, 2024. Notice of Sentencing, filed July 9, 2024 (Doc. 7). The primary issues are: (i) whether the United States Probation Office's Revised Presentence Investigation Report, filed September 27, 2024 (Doc. 11)("Revised PSR"), incorrectly applies a 4-level enhancement under § 2K2.1(b)(6)(b) for possessing a firearm in connection with another felony offense, <u>i.e.</u>, possession of cocaine; and (ii) whether the Revised PSR incorrectly applies a 2-level enhancement under § 3C1.1 for obstruction of justice with respect to the offense of conviction, <u>i.e.</u>, felon in possession of a firearm. Having reviewed carefully the parties' arguments, relevant law, and applicable facts, the Court: (i) concludes that the PSR incorrectly applies a 4-level enhancement under § 2K2.1(b)(6)(b); and (ii) the PSR incorrectly applies a 2-level enhancement under § 3C1.1. The Court thus sustains the Defendant's Response.

**<u>FACTUAL BACKGROUND</u>**

Olaiz does not object to the PSR's facts, and the Court thus concludes that they are findings of fact. <u>See</u> Federal R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of

the presentence report as a finding of fact").  Olaiz possessed cocaine, and washed it down the toilet and shower when Federal Bureau of Investigation ("FBI") agents knocked on his hotel room door in Albuquerque, New Mexico.  <u>See</u> Revised PSR ¶¶ 9, 14, at 4-5.  The FBI also finds that Olaiz possessed a Glock 19, 9mm pistol firearm and 46 rounds of ammunition.  <u>See</u> Revised PSR ¶ 14, at 5.  Olaiz pleads guilty to Count 1: Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924.  <u>See</u> Plea Agreement at 2, filed July 5, 2024 (Doc. 4).

## <u>PROCEDURAL BACKGROUND</u>

The United States Probation Office ("USPO") filed an initial Presentence Investigation Report.  <u>See</u> Presentence Investigation Report, filed September 9, 2024 (Doc. 8)("First PSR"). The First PSR indicates that Olaiz' base offense level is 22.  First PSR ¶ 19, at 5.  It reflects no additional special offense characteristics or adjustments.  <u>See</u> First PSR ¶¶ 20-25, at 5.  It also reflects two offense level reductions: (i) a 2-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a); and (ii) a 1-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).  First PSR ¶¶ 26-27, at 5.  With a total offense level of 19 and a criminal history category of III, the First PSR calculates that Olaiz's imprisonment range is 37 to 46 months. <u>See</u> First PSR ¶ 64, at 13.

On September 19, 2024, the United States filed its objections to the PSR.  <u>See</u> United States' Objections to the Presentence Investigation Report, filed September 19, 2024 (Doc. 10)("United States' Objections").  The United States asserts that the First PSR fails to assess two offense-level enhancements: (i) a 4-level enhancement under § 2K2.1(b)(6)(b) for possessing a firearm in connection with another felony offense, <u>i.e.</u>, possession of cocaine; and (ii) a 2-level

enhancement under § 3C1.1 for obstruction of justice with respect to the instant offense of conviction, i.e., felon in possession of a firearm.  See United States' Objections at 1-2.

The USPO agrees with the United States' objections and filed the Revised PSR, which adopts both offense-level enhancements.  See Revised PSR at 5; Addendum to the Presentence Report at 1, filed September 27, 2024 (Doc. 13)("Addendum").  With a total offense level of 25 and a criminal history category of III, the Revised PSR calculates that Olaiz' imprisonment range is 70 to 87 months.  See Revised PSR ¶ 64, at 13.  Olaiz filed objections to the Revised PSR, contending that neither offense-level enhancements applies.  See Response at 7.

## LAW REGARDING OBJECTIONS TO A PRESENTENCE REPORT

Before the Court imposes a sentence, the USPO "must conduct a presentence investigation and submit a report to the court . . . ."  Fed. R. Crim. P. 32(c)(1).  A presentence report must apply the advisory sentencing Guideline, meaning that it must:

(A)    identify all applicable guidelines and policy statements of the Sentencing Commission;

(B)    calculate the defendant's offense level and criminal history category;

(C)    state the resulting sentencing range and kinds of sentences available;

(D)    identify any factor relevant to:

   (i)    the appropriate kind of sentence, or

   (ii)    the appropriate sentence within the applicable sentencing range; and

(E)    identify any basis for departing from the applicable sentencing range.

Fed. R. Crim. P. 32(d)(1).  A presentence report also must provide additional information, including:

(A)    the defendant's history and characteristics, including:

(i)     any prior criminal record;

(ii)    the defendant's financial condition; and

(iii)   any circumstances affecting the defendant's behavior that may be helpful in
        imposing sentence or in correctional treatment;

(B)     information that assesses any financial, social, psychological, and medical impact
        on any victim;

(C)     when appropriate, the nature and extent of nonprison programs and resources
        available to the defendant;

(D)     when the law provides for restitution, information sufficient for a restitution order;

(E)     if the court orders a study under 18 U.S.C. § 3552 (b), any resulting report and
        recommendation;

(F)     a statement of whether the government seeks forfeiture under Rule 32.2 and any
        other law; and

(G)     any other information that the court requires, including information relevant to the
        factors under 18 U.S.C. § 3553(a).

Fed. R. Crim. P. 32(d)(2).

After the USPO files a PSR, the parties have an opportunity to object to the report.  See

Fed. R. Crim. P. 32(f).  Parties must make their objections in writing within fourteen days of

receiving the PSR.  See Fed. R. Crim. P. 32(f)(1).  Parties may object to many aspects of the PSR,

"including objections to material information, sentencing guideline ranges, and policy statements

contained in or omitted from the report."  Fed. R. Crim. P. 32(f)(1).  For example, a party can

object to a PSR's statement of facts.  See, e.g., United States v. Garcia, No. CR 20-1370 KWR,

2022 WL 2341670 (D.N.M. June 29, 2022)(Riggs, J.)(sustaining in part and overruling in part a

defendant's objections that a PSR misstates material facts regarding the posted speed limit and the

circumstances surrounding the victim's injuries).  If a party raises a factual objection, it must

present "information to cast doubt on" the PSR's recitation of the facts.  See United States v. Yates, 22 F.3d 981, 989 (10th Cir. 1994).  A party also can object that the USPO miscalculated a defendant's criminal history category.  See, e.g., United States v. Chavez, No. CR 18-0836 JB, 2018 WL 6621283 (D.N.M. December 18, 2018)(Browning, J.)(addressing a defendant's objections that the Court should reduce his criminal history category by several points).  Similarly, a party can object that a PSR impermissibly applies a base-offense-level enhancement, see, e.g., United States v. Casias-Grove, No. 22-0109 JB, 2022 WL 17830249 (D.N.M. December 21, 2022)(Browning, J.)(sustaining a defendant's objection that the PSR impermissibly applies a 4-level enhancement to his base-offense-level); that the PSR should have applied an additional base-offense-level enhancement, see, e.g., United States v. Talk, No. CR 19-1994 JB, 2021 WL 1978624 (D.N.M. May 18, 2021)(Browning, J.)(sustaining the United States' objection that the PSR should have applied a 4-level enhancement to the defendant's base offense level); or that the PSR should have applied a base offense level decrease, see, e.g., United States v. Pena, Nos. CR 19-3609 JB, CR 19-3611 JB, 2022 WL 16924000 (D.N.M. November 13, 2022) (Browning, J.)(sustaining the parties' objections that the PSR should have applied a 2-level reduction to the defendant's base offense level).

Ideally, the parties and the USPO can work through objections without the Court's assistance.  Rule 32(f)(3) establishes: "After receiving objections, the probation officer may meet with the parties to discuss the objections.  The probation officer may then investigate further and revise the presentence report as appropriate."  Fed. R. Civ. P. 32(f)(3).  In keeping with rule 32(f)(3), long ago in the District of New Mexico, the Court, the United States Attorney's Office, and the Federal Public Defender's Office agreed that, if there are objections, counsel first will talk to the USPO and see if they can work to address the objections independently.  If the parties and

the USPO cannot work out an objection, then the parties may file an objection with the Court.  If the parties and the USPO cannot resolve an objection, rule 32(g) establishes that, "[a]t least 7 days before sentencing, the probation officer must submit to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them."  Fed. R. Crim. P. 32(g).

If the parties and the USPO cannot resolve an objection on their own, the Court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  When resolving factual objections, the Court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence. See United States v. Munoz-Tello, 531 F.3d 1174 (10th Cir. 2008).  Similarly, in considering objections to enhancements to a defendant's criminal history category or base offense level, the Court must determine whether the United States has met its burden of showing that a particular enhancement applies by a preponderance of the evidence.[1]  See United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1315 (D.N.M. 2014)(Browning, J.).  The Court may base its conclusion "on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentenc[ing] hearing."  United States v. Garcia, 2022 WL 2341670, at *2 (quoting United States v. White, 663 F.3d 1207, 1216 (11th Cir. 2011)).

---

[1]There is some nuance regarding the applicable burden of proof required for sentencing enhancements, which the Court discusses in greater detail in the next section.

## LAW REGARDING THE BURDEN OF PROOF REQUIRED FOR ENHANCEMENTS
## UNDER THE GUIDELINES

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within the range prescribed by statute." 530 U.S. at 481 (emphasis in original). The Supreme Court cautioned, however, that the Constitution of the United States of America limits this discretion and that the Sixth Amendment to the Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. at 490. In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in Apprendi v. New Jersey, stating that the "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. at 303 (emphasis in original)(citing Ring v. Arizona, 536 U.S. 584, 602 (2002); Harris v. United States, 536 U.S. 545, 563 (2002)(plurality opinion), overruled by Alleyne v. United States, 570 U.S. 99 (2012)). In United States v. Booker, however, the Supreme Court held that, because the sentencing guideline ranges are no longer mandatory, "Apprendi does not apply to the present advisory-Guidelines regime." United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)(citing United States v. Booker, 543 U.S. at 259). See United States v. Booker, 543 U.S. at 259 ("[W]ithout this provision [of the Guidelines statute] -- namely, the provision that makes 'the relevant sentencing rules . . . mandatory and impose[s] binding requirements on all sentencing judges' -- the statute falls outside the scope of Apprendi's requirement." (quoting United States

- 7 -

v. Booker, 543 U.S. at 221)(second alteration added by United States v. Booker)).  More recently, the Supreme Court held that the requirements in Apprendi v. New Jersey apply to facts that increase a defendant's mandatory minimum sentence.  See Alleyne v. United States, 570 U.S. at 103.

In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that Blakely v. Washington and United States v. Booker did not change the district court's enhancement findings analysis.  See United States v. Magallanez, 408 F.3d at 684-85.  United States v. Magallanez involved plain-error review of a drug sentence in which a jury found the defendant guilty of conspiracy to possess with intent to distribute and conspiracy to distribute methamphetamine.  See United States v. Magallanez, 408 F.3d at 676.  As part of its verdict, the jury, through a special interrogatory, attributed to the defendant 50 to 500 grams of methamphetamine; at sentencing, however, the judge -- based on government witnesses' testimony of the various amounts that they had sold to the defendant -- attributed 1,200 grams of methamphetamine to the defendant and used that amount to calculate his sentence under the Guidelines.  See United States v. Magallanez, 408 F.3d at 682.  The district court's findings increased the defendant's Guidelines sentencing range from 63 to 78 months, based on the jury's 50 grams amount, to 121 to 151 months, based on the judge's 1,200 grams amount.  See United States v. Magallanez, 408 F.3d at 682-83.  On appeal, the Tenth Circuit stated that, both before and after Congress' passage of the "Sentencing Reform Act, sentencing courts maintained the power to consider the broad context of a defendant's conduct, even when a court's view of the conduct conflicted with the jury's verdict."  United States v. Magallanez, 408 F.3d at 684.  Although United States v. Booker made the Guidelines ranges "effectively advisory," United States v. Booker, 543 U.S. at 245, the Tenth Circuit reaffirmed that "district courts are still required

to consider Guideline ranges, which are determined through application of the preponderance standard, just as they were before." United States v. Magallanez, 408 F.3d at 685.

The Tenth Circuit, while "recognizing 'strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof,'" has "long held that sentencing facts in the 'ordinary case' need only be proven by a preponderance." United States v. Olsen, 519 F.3d 1096, 1105(10th Cir. 2008)(quoting United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993)).[2]  "[T]he application of an enhancement . . . does not implicate

---

[2]Although the Tenth Circuit stated in United States v. Washington that "the issue of a higher than a preponderance standard is foreclosed in this circuit," 11 F.3d at 1516, the Tenth Circuit has since characterized its holding as leaving "open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an 'extraordinary or dramatic' amount," United States v. Ray, 704 F.3d at 1314 (quoting United States v. Olsen, 519 F.3d at 1105).  See United States v. Olsen, 519 F.3d at 1105 (affirming the use of the preponderance-of-the-evidence standard for sentencing facts that increase a sentence in the "'ordinary case'" (quoting United States v. Washington, 11 F.3d at 1516)).  The Tenth Circuit has not yet found that an "extraordinary or dramatic" instance warrants a higher standard of proof for certain facts that enhance a defendant's sentence.  United States v. Olsen, 519 F.3d at 1105 (explaining that it need not determine whether a higher standard of proof is required to sentence a defendant for committing perjury in relation to a grand jury investigation, because the enhancement did not require the district court to determine that the defendant committed murder, but only that he obstructed a homicide investigation).  See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)(affirming a preponderance-of-the-evidence standard for facts that enhance a defendant's offense level 4 levels); United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000)(rejecting the defendant's argument that a dramatic increase in a sentence because of a sentencing judge's finding of additional amounts of methamphetamine associated with acquitted charges entitled the defendant to a clear-and-convincing evidence standard at sentencing, and noting that the Tenth Circuit "foreclosed by binding precedent" this argument); United States v. Washington, 11 F.3d at 1516 (concluding that a district court need not find by any more than a preponderance of the evidence the amount of cocaine a defendant distributed, even though its findings increased the defendant's sentence from twenty years to consecutive forty-year terms).  Subsequent to United States v. Washington, the Tenth Circuit reiterated the position that preponderance of the evidence is the proper standard, stating: "The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence.  This issue has been foreclosed in this Circuit."  United States v. Robertson, 946 F.3d 1168, 1171 (10th Cir. 2020)(citing United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001)).

the Supreme Court's holding in <u>Apprendi v. New Jersey</u>." <u>United States v. Reyes-Vencomo</u>, No. CR 11-2563 JB, 2012 WL 2574810, at *7 (D.N.M. June 26, 2012)(Browning, J.). The Tenth Circuit applies <u>Apprendi v. New Jersey</u>'s requirement that a fact be submitted to a jury only where the fact would increase a defendant's sentence "above the statutory maximum permitted by the statute of conviction." <u>United States v. Price</u>, 400 F.3d 844, 847 (10th Cir. 2005). <u>Accord</u> <u>United States v. Ray</u>, 704 F.3d at 1314. A defendant may assert an error under <u>Apprendi v. New Jersey</u> only where the fact at issue increases his or her sentence beyond the statutory maximum. <u>See</u> <u>United States v. O'Flanagan</u>, 339 F.3d 1229, 1232 n.2 (10th Cir. 2003)(holding that a defendant could not assert an error under <u>Apprendi v. New Jersey</u>, because "his sentence does not exceed the statutory maximum"); <u>United States v. Hendrickson</u>, 592 F. App'x 699, 705 (10th Cir. 2014)(unpublished)(holding that, after <u>Alleyne v. United States</u>, "[i]t is well-established that sentencing factors need not be charged in an indictment and need only be proved to the sentencing judge by a preponderance of the evidence").[3] The Court has noted:

> [A]lthough the decision of the Supreme Court of the United States in <u>Alleyne v. United States</u> . . . expands the rule from <u>Apprendi v. New Jersey</u>, . . . (holding that facts that increase the maximum sentence a defendant faces must be proven to a jury beyond a reasonable doubt), to cover facts that

---

[3]<u>United States v. Hendrickson</u>, 592 F. App'x 699 (10th Cir. 2014) is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

<u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005)(unpublished). The Court concludes that <u>United States v. Hendrickson</u> has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

increase the mandatory minimum sentence, as well as the maximum sentence, it
does not prohibit district judges from continuing to find advisory sentencing factors
by a preponderance of the evidence.  See [United States v. Sangiovanni, No. CR
10-3239  JB,]  2014  WL  4347131,  at  *22-26  [(D.N.M.  August  29,
2014)(Browning, J.)].

United States v. Cervantes-Chavez, 59 F. Supp. 3d at 1315.  The Supreme Court has clarified that

"[b]oth the 'floor' and 'ceiling' of a sentencing range 'define the legally prescribed

penalty.' . . . And under our Constitution, when 'a finding of fact alters the legally prescribed

punishment so as to aggravate it,' that finding must be made by a jury of the defendant's peers

beyond a reasonable doubt."  United States v. Haymond, 588 U.S. 634, 645 (2019)(quoting

Alleyne v. United States, 570 U.S. at 112-14).  Further, the Tenth Circuit has determined that a

district court could use its own finding on drug quantity to enhance a defendant's Guidelines range

consistent with Alleyne v. United States, "so long as the court does not use its own drug quantity

finding to alter the defendant's statutory sentencing range."  United States v. Cassius, 777 F.3d

1093, 1094 (10th Cir. 2015)(emphasis in original).

## ANALYSIS

The Court sustains both objections in the Defendant's Response, and concludes that neither

the 4-level nor the 2-level enhancement applies.  First, the Revised PSR incorrectly applies the 4-

level enhancement under § 2K2.1(b)(6)(B), because the United States does not meet its burden to

show that Olaiz' firearm possession is in connection with his cocaine possession.  Second, the PSR

incorrectly applies the 2-level enhancement under § 3C1.1 for obstruction of justice, because

Olaiz' destruction of cocaine does not hinder the investigation into his firearm possession.

I.      **THE 4-LEVEL ENHANCEMENT DOES NOT APPLY BECAUSE THE UNITED STATES HAS NOT SHOWN, BY A PREPONDERANCE OF EVIDENCE, THAT OLAIZ' POSSESSION OF A FIREARM IS IN CONNECTION WITH HIS POSSESSION OF COCAINE.**

Olaiz argues that the 4-level enhancement does not apply, because the United States cannot prove, by a preponderance of the evidence, that his firearm possession is in connection with another felony offense: cocaine possession.  See Response at 2.  Section 2K2.1(b)(6)(B) requires that the defendant use or possess the firearm "in connection with," or "with knowledge, intent, or reason to believe that it would be used or possessed in connection with" another felony offense. USSG § 2K2.1(b)(6)(B).  The Commentary further explains that the firearm must have "facilitated, or had the potential of facilitating, another felony offense or another offense, respectively."  USSG § 2K2.1(b)(6)(B) cmt. n.14(A).  See United States v. Sanchez, 22 F.4th 940, 942 (10th Cir. 2022)("In this Circuit, however, we have long interpreted 'in connection with' as used in subsection (b)(6)(B) [. . . ] as requiring the Government to show by a preponderance of evidence that the firearm facilitated or had the potential to facilitate, i.e., make easier, another felony offense.")(emphasis in original).

In United States v. Sanchez, the Tenth Circuit applies the 4-level enhancement under § 2K2.1(b)(6)(B), because the defendant's possession of a loaded firearm "emboldened" him to accept the "enhanced risk" of possessing a stolen vehicle.  22 F.4th at 942.  The Tenth Circuit upholds the district court's finding that the defendant "could have carried the gun to intimidate anyone who sought to interfere with his possession of the vehicle."  22 F.4th at 942.  In contrast, here, evidence of any relationship between Olaiz' gun and the vacuum-sealed clear plastic package of cocaine is too tenuous to conclude that the former "embolden[s]" him to possess the latter. Revised PSR ¶ 13, at 4.  The United States shows only that both are in the same hotel room at the

same time -- but nothing more.  The United States Court of Appeals for the Sixth Circuit notes in United States v. Hardin, 248 F.3d 489 (6th Cir. 2001), that the § 2K2.1(b)(5) enhancement does not apply "merely upon proof that narcotics and firearms were present in the same residence, or even in the same room."  United States v. Hardin, 248 F.3d at 495-96.  If a defendant possesses cocaine for personal use, then his gun is unlikely to "intimidate anyone who seeks to interfere" with his cocaine possession and would not meet § 2K2.1(b)(5)'s "in connection with" requirement. United States v. Sanchez, 22 F.4th at 942; USSG § 2K2.1(b)(6)(B).  If, however, a defendant traffics cocaine, then his gun likely "emboldens" that trafficking.  United States v. Hardin, 248 F.3d at 491, 496 (concluding that the "in connection with" requirement is met, because the defendant pleads guilty to possession with intent to distribute fifty-four grams of cocaine and to possession of the gun found in the same room).

        Here, the United States has not shown by a preponderance of evidence that Olaiz possesses cocaine for trafficking rather than for personal use, such that his gun "emboldens" his possession. USSG § 2K2.1(b)(5).  The facts in the PSR equally suggest both possibilities.  See Addendum at 1.  FBI agents state that the vacuum sealed clear plastic bag of cocaine is "consistent with a one-pound size bag," which may suggest trafficking, but Olaiz contends that it is "only a few grams," which equally may suggest personal possession.  Addendum at 1.  The preponderance of evidence, therefore, does not show that Olaiz possesses the gun to facilitate cocaine trafficking.  See Revised PSR ¶ 11, at 4.  The Court concludes that the Revised PSR incorrectly applies the 4-level enhancement under § 2K2.1(b)(6)(B) for possession of a firearm in connection with possession of cocaine and sustains Olaiz' objection to this enhancement.

## II.    THE 2-LEVEL ENHANCEMENT DOES NOT APPLY, BECAUSE OLAIZ'S OBSTRUCTION OF JUSTICE DOES NOT HINDER THE INVESTIGATION INTO HIS POSSESSION OF A FIREARM.

Olaiz contends that the 2-level enhancement does not apply, because his destruction of cocaine is unrelated to the offense of his conviction: being a felon in possession of a firearm.  See Response at 4.  Section 3C1.1 requires that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense."  USSG § 3C1.1 (emphasis added).  The Commentary further notes that, if the obstructive conduct occurs "contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance)," it must result in a "material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender[.]"  USSG § 3C1.1 cmt. n.4(D).

In United States v. Gacnik, 50 F.3d 848 (10th Cir. 1995), the Tenth Circuit holds that, although the defendant hid explosive materials when the police searched the apartment in connection with reported gunshots, she does not know of the police's concurrent investigation into the manufacture of explosives.  See 50 F.3d at 851-53.  The Tenth Circuit holds: "We disagree with the district court that the very act of concealment, standing alone, is sufficient evidence of Ms. Gacnik's awareness of an investigation pointed at her offense of conviction."  50 F.3d at 853.  Similarly, here, Olaiz' act of washing cocaine down the toilet and shower is unrelated to the investigation regarding Olaiz's possession of a firearm and ammunition.  While Olaiz' destruction of cocaine hindered the investigation into his possession of cocaine, § 3C1.1's language requires that the obstruction of justice must hinder the investigation of the federal offense for which the

defendant is being sentenced, not of another offense.  In contrast, § 2K2.1(b)(6)(B)'s language requires that the possession of a firearm is in connection with "another" felony offense.  Had Olaiz' destruction of cocaine hindered in some way the FBI's finding of the Glock 19 and rounds of ammunition in Olaiz' possession, the 2-level sentencing enhancement would apply.  That, however, is not the case here.  The Court concludes, therefore, that the PSR incorrectly applies the 2-level enhancement under § 3C1.1 for obstruction of justice.

**IT IS ORDERED** that: (i) the objections in the Defendant's Response in Opposition to the United States' Objections to the Presentence Report [Doc. 10] and Objections to the Revised Presentence Report [Doc. 11], filed September 29, 2024 (Doc. 15)("Response"), are sustained; (ii) the applicable offense level is 19; (iii) the applicable criminal history category is III; and (iv) the United States Sentencing Guidelines establish an imprisonment range of 37 to 46 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alex M. M. Uballez
    United States Attorney
Paul J. Mysliwiec
    Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Richelle Anderson
The Law Office of Ryan J. Villa
Albuquerque, New Mexico

        *Attorneys for the Defendant*

- 15 -